J. R. WESSINGER *v.* MAUSUR & TIBBETTS IMPLEMENT CO.

1. ATTACHMENTS. *Change of venue. Laws* 1892, *ch.* 93, *p.* 362.· *Coahoma county districts.*

   Under the act dividing Coahoma county into two circuit court districts (Laws 1892, p. 362), an attachment suit, instituted before the passage of the act, could be rightfully transferred to the second district for trial.

2. SAME. *One county to another. Jurisdiction.*

   An attachment suit, by consent of the parties, may be transferred by change of venue from the circuit court of one county to that of another. *Wilson* v. *Rodewald,* 49 Miss., 506, overruled.

3. PRACTICE. *Waiver of jury. Decision of facts by judge. Agreement as to weight of finding.*

   If the parties waive a jury and submit a question of fact to the judge, the supreme court will attach the same weight to the finding of the judge which would be given to the verdict of a jury; and will not be bound by an agreement of counsel that weight should not be so given.

4. PLEADING. *Uncertainty. Recoupment. Damages.*

   A plea, by way of recoupment, which is so vague as to furnish no data on which to ascertain damages, is demurrable. *Andre* v. *Morrow,* 65 Miss., 315, distinguished.

FROM the circuit court of Leflore county.

HON. R. W. WILLIAMSON, Judge.

The facts are stated in the opinion.

*J. W. Cutrer,* for appellant.

On February 19, 1892, before the case was at issue, either upon the question of attachment or upon the merits, the legislature passed an act dividing Coahoma county into two judicial

districts.   By the provisions of section 14 of that act, which
provided that residents of the second district should have the
right in pending suits, but not attachment suits, to have the
same transferred for trial to the second judicial district of Coa-
homa county, the entire attachment proceeding was transferred
to the second judicial district of Coahoma county, and in that
district the case was at issue.   This transfer was without au-
thority, since the act of 1892 is of the force only of § 650,
code of 1892, or § 1498 of code of 1880.   In such case transfer
or change of venue can be had under provisions of § 655, code
of 1892, or § 1502, code of 1880.   An order was taken trans-
ferring the case, by consent, to the circuit court of Leflore
county.   There was no anterior compliance with any provisions
of the statutes which authorize such a transfer.   This being an
action instituted by attachment, the provisions of § 650 of the
code of 1892 do not apply to or warrant any change of
venue at all, but the provisions of § 655 must be literally
complied with.   *Smith* v. *Mulhern,* 57 Miss., 591; *Baum* v.
*Burns,* 66 Miss., 124.   Consent can never confer jurisdiction,
but where it is sought to secure a change of venue, and vest
the jurisdiction in courts other than those which the statutes
say shall originally exercise the jurisdiction, such statutes must
be strictly complied with, else the proceedings in such other
courts are without effect.     *Wilson* v. *Rodewald,* 49 Miss., 506;
*Yalobusha Co.* v. *Carbry,* 3 Smed. & M., 529.

The court ought to have sustained appellant's motion to
exclude the evidence offered by appellees, and entered a judg-
ment in favor of appellant.   An impartial, discriminating,
and analytical consideration of the record, we believe, will sup-
port us in this contention.   If, however, such a position is
not maintainable, we rely with the utmost confidence upon the
position that the case for appellees has not been made out by
a preponderance of the evidence, and, for that reason, judg-
ment should have been entered against the attaching creditors.
Neither litigant was willing to commit its fate to the deter-

mination of the lower court, and, therefore, it was provided that this court should take up the whole record and consider the facts and the law, and, without regarding the judgment of the trial judge as *prima facie* correct, either in law or in fact, affirm or reverse the judgment appealed from, according to such interpretation of the facts as the court may see proper to adopt, giving such weight only to the evidence as a thorough individual examination of the record by each member of the court, upon his own responsibility, may force upon him.   When this court shall have discharged that duty, we feel secure that the judgment appealed from will be reversed.   The question of the right to recoup, under the state of case exhibited by appellant's pleadings, is not to be denied in this state.   *Myers* v. *Estelle*, 47 Miss., 4; *Andre* v. *Morrow*, 65 Miss., 315.

*Rush & Gardner*, for appellees.

We do not dispute the proposition advanced by counsel for appellant that consent cannot give jurisdiction where the court does not have jurisdiction over the subject-matter.   That proposition is not under consideration in this case.   The rule, as we understand it, is this: "That it is only where the court has no jurisdiction of the subject-matter of the proceeding or action in which an order is made or judgment rendered, that the order or judnment is wholly void.   It is to such cases only that the maxim applies, that consent cannot give jurisdiction."

In response to the objection that the court erred in sustaining the demurrer of plaintiff to the plea of defendant, setting up damages by way of recoupment for breach of contract, we have to say that defendant should have filed with his plea an account stating distinctly the nature of the different items composing the damage alleged to have been sustained.   This is the rule, as prescribed by the statute in cases where a set-off is pleaded (§ 688, code of 1892).   We can see no reason why the same practice should not be required in pleading damages by way of recoupment.   "An answer, by way of counter claim, should be

tested as if it were a complaint by defendant against plaintiff.'' *Vassear* v. *Livingston*, 13 N. Y., 248; 18 Am. & Eng. Enc. L., 498.

*D. A. Scott*, on same side.

The supreme court of Missouri, in the case of *Kramer* v. *Wilson*, 22 Mo. App., 175, considered the fact that a debtor, soon after the purchase of the goods, made an offer of compromise of twenty-five cents in the dollar as one of the most significant facts tending to show fraud. *Cole* v. *Cole*, 33 Me., 545; *Marvin* v. *Richmond*, 3 Den., 58; *Unthank* v. *Travelers' Ins. Co.*, 4 Biss., 359. If the intent of the assignor was to force a compromise or obtain some benefit to himself, his intent may be inquired into. *Keevil* v. *Donaldson*, 20 Kan., 168; *Baily* v. *Mills*, 27 Texas, 438; *VanHook* v. *Walton*, 28 Texas, 74. An assignment is fraudulent where the purpose of the assignor to compel the creditors to compromise their claims appears, from the instrument or by evidence aliunde, such an assignment being for the purpose of hindering, delaying and defrauding the creditors. *Keevil* v. *Donaldson*, 20 Kan., 168; *Wakeman* v. *Grover*, 4 Paige, 147; *Grover* v. *Wakeman*, 11 Wend., 187. The credit accorded the appellant, Weissinger, by appellee, was based upon the false and fraudulent statements to Bradstreet's Commercial Agency, and the rightfulness of the attachment cannot be questioned. By thus making false and fraudulent representations, he perpetrated a fraud upon these appellees, and if it appears, as I insist it does, that but for such statements the credit would not have been extended him, then it was, in fact, a fraudulent scheme of defendant which justified the issuance of an attachment and the judgment of the lower court.

Argued orally by *J. W. Cutrer*, for appellant.

WOODS, C. J., delivered the opinion of the court.

The counsel for the appellant advances three propositions

for our consideration, in his argument for a reversal. We shall consider them in the order made and argued by counsel.

The circuit court of Leflore county had no jurisdiction to hear and determine the cause, and this contention rests upon two grounds, viz., that the transfer of the case from the first to the second judicial district of Coahoma county was without authority of law, and, next, that the transfer, by change of venue, of the cause from the second district of Coahoma county to the county of Leflore was an attempt to confer jurisdiction on the circuit court of that county by consent of the parties. As to the first ground—that of the transfer from the first to the second district of Coahoma county—it is only necessary to refer to the statute, sec. 14, ch. 93, acts of 1892, to demonstrate the unsoundness of this branch of the contention. This section, so far as necessary to quote, is in these words: "Sec. 14. All civil suits, proceedings or matters now pending in the circuit or chancery courts of said county [Coahoma], when the defendant, if such suits or proceedings were hereafter brought or instituted, would be entitled to be sued or have such proceedings instituted in the second district, shall, on motion of the defendant, be transferred forthwith to the second district of said county, provided a motion to that effect be made on or before the third day of the next succeeding term of the court, in which the suit, proceeding or matter shall be pending, holden after the passage of this act," etc. This is a special statute enacted subsequent to § 650 of the code of 1892, and peculiar to the two judicial districts of Coahoma county, and the code section is without influence. *Baum* v. *Burns*, 66 Miss., 124, cited by counsel in support of his contention, is authority for the statement that the code, § 650, does not apply to attachment suits, and that a change of venue in such suits cannot be made thereunder. But the special statute for Coahoma county, ch. 93, acts of 1892, expressly authorizes a transfer from the one judicial district to the other, in the instances therein named, of "all civil suits, proceedings or matters now pending," etc. It

is difficult to conceive any language more all-comprehensive. The plain intent was to authorize all suits and proceedings, of every name and character, to be transferred to the judicial district where the suit or proceeding would have to be instituted, if brought thereafter.

It is not improper to remark that we have been unable to find in the record any transfer of this suit to the second district of Coahoma county, but the transcript is so imperfect, confused, and fragmentary that we fear this transfer may lie hidden somewhere out of view; and we have therefore treated the matter as counsel has treated it. Of course, if no transfer is disclosed by the record, this contention would have to be denied without reference to the proper construction of the statute.

The second ground of the contention of counsel as to the want of jurisdiction in the circuit court of Leflore county, and the powerlessness of consent to confer jurisdiction, grows out of the confusing of the question of jurisdiction with another, and quite distinct, question, viz.: Can the venue be changed by consent?

It must be borne in mind that the circuit court of Leflore county had full jurisdiction to try attachment suits, and no agreement or consent of parties was necessary to confer jurisdiction over the subject-matter. The law had confided to the circuit court of that county, just as to the county of Coahoma, jurisdiction to try attachment suits, and the transfer of the cause to Leflore county, by consent of the parties, did not confer, or attempt to confer, authority to hear and determine the cause upon a court without jurisdiction to hear and determine cases of this character. It was not a conferring of jurisdiction over the subject-matter, for the court had that, but a conferring of jurisdiction, by consent, over the person of the defendant. The circuit court of Leflore county, by our constitution and laws, had jurisdiction of the subject-matter, but did not have jurisdiction of the persons of the parties, and the effect of the change of venue was to confer this jurisdiction over the person,

and nothing more. The circuit court of Leflore county had jurisdiction to try such cases as the one transferred by change of venue, and though the exercise of that jurisdiction might be conditioned upon the acquisition of jurisdiction of the person of the defendant also, yet when the party submitted himself to the jurisdiction of that court by consenting to the change of venue, and by his subsequent appearance in that court, and by participating in the trial of the cause so transferred, the jurisdiction both of the subject-matter and of the person was complete. Jurisdiction of the subject-matter, jurisdiction to try like causes, reposed in the court by its very constitution, and jurisdiction of appellant's person was conferred by consent—by the change of venue, to which he consented, and by his subsequent appearance in the Leflore court and his active participation in a protracted litigation. The question here is one of venue and not of jurisdiction.

Counsel rely with great confidence upon the opinion of this court, delivered by Tarbell, J., in *Wilson* v. *Rodewald*, 49 Miss., 506, and that opinion directly supports the views advanced by counsel. But it is not in harmony with other decisions of this court, and, so far as we know, stands alone amidst all the similar cases decided in other states.

In *Peters* v. *Finney*, 12 Smed. & M., 449, said Sharkey, C. J.: "The attachment is but process, and objections to process are generally waived by appearance to the action. The court, in this instance, had jurisdiction of the subject-matter; it was a matter of contract, transitory in its character. But suit could not be instituted by this particular process, because the remedy by attachment is not given to nonresidents; not prohibited to them, but not given. It was the defendant's privilege not to submit to be sued in attachment, as, between himself and the plaintiff, it was not the proper process, but he could waive this objection, either directly or impliedly. It was but a question of jurisdiction over the person, and by adopting a particular course of pleading, he admits that the court has jurisdiction

over him—that he is properly in court.   The doctrine that con-
sent does not give jurisdiction has no application.   It is only
true as to the subject-matter of the suit."

In the case of *Williams, Supt. of Education*, v. *Parker
et al.*, not reported, but found on pp. 558, 559, · opinion
book "J," the opinion in *Wilson* v. *Rodewald* is treated with
much tenderness, though not named, but is, in effect, overruled.

In the case of *Williams, Superintendent of Education*, v.
*Parker*, the suit was by bill in chancery for the enforcement of
a vendor's lien upon the lands described in the bill.   By con-
sent the cause was transferred, by change of venue, to the
chancery court of' Leflore county, and there a final decree was
entered.   The contention there was, as here now, that the chan-
cery court of Leflore county had no jurisdiction of the case.
Said Campbell, J., in delivering the opinion of the court:
"The consent of parties to transfer the cause to the chancery
court of Leflore county, and the proceedings there, by their
consent, removes all objection to the jurisdiction of that court.
It is not like a local action at law, which, according to former
decisions of this state, ·cannot be tried, even by consent, in an-
other county.   But for these decisions we would have supposed
that the venue, even in a local action, might be changed by
consent, as may be done in England, and we are clearly of the
opinion that there is nothing to hinder the transfer of any case
like this, by consent of the parties, from one court of chancery
to another."   We go, now, a step further, and declare that an
attachment suit, a local action, if you will, by consent of par-
ties, may be transferred from the circuit court of one county to
the circuit court of another, and the case of *Wilson* v. *Rodewald*,
49 Miss., 506, in so far as the same is in conflict with this opin-
ion, is hereby overruled.

It is useless to cite authorities from other states and from
England.   They may be found everywhere, and are almost
uniform in supporting the view we have taken.

We come next to consider the second contention of appellant's

counsel, which is that the evidence was insufficient to warrant the judgment of the court on the trial of the attachment issue proper. It is to be noted that the case, on its facts, was, by agreement, submitted to the court below without the intervention of a jury, and the weight to be attached to such finding by the court was sought to be cut off from our consideration by an agreement of counsel that this court should not attach any weight to the finding of the court. The counsel may bind themselves by agreements, but we must, with the utmost respect for counsel, decline to permit ourselves, as a court, to be so bound; and the judgment of the court below will receive from us precisely that weight which we should give to the verdict of the jury.

We confine our remarks to that phase of the case presented by the evidence which was offered to support that ground of attachment which charged that appellant had assigned or disposed of his property or rights in action with intent to defraud his creditors. We cannot recite all this evidence, and content ourselves by reference to a few of the facts disclosed by appellee's evidence offered to show the false and fraudulent character of the sale of the stock of hardware, etc., made by appellant to the claimant, the Delta bank: (1) That no credit was entered at the date of the sale, or afterwards, on the bank's books evidencing the payment by such sale of the $8,000. One by appellant to the bank, and which was the direct consideration for the sale. (2) The retention by the bank, after the sale, of all the notes of appellant theretofore held by it. (3) The payment by the bank of $2,900 to the Simmons Hardware Co. for a debt held by that company for $4,400 against appellant, and this after the sale and when appellant was hopelessly insolvent. (4) The promise of the bank to pay 45 per centum of the large claim held by the Wetter Manufacturing Co. against appellant, and this after sale and when appellant was hopelessly insolvent. (5) The refusal of the bank to deliver its certificates of stock for $1,000 to Weems, who had purchased it from ap-

pellant until the litigation which followed the sale between appellants and his creditors had been ended, in order that the bank might be able to ascertain, after realizing on the assets of appellant, whether appellant might be indebted to the bank for any balance after realizing on said assets. (6) The alteration of appellant's account on the books by erasing the credit then appearing there in appellant's favor and inserting in lieu thereof a debit item of $1,000. This is enough, if relied upon by the court below, to warrant the finding on the facts, and we cannot disturb that finding. Indeed, it is difficult to see how an unprejudiced mind could have reached any other conclusion than that at which the learned judge below arrived.

The remaining contention of counsel calls in question the correctness of the court's action in sustaining the appellees' demurrer to appellant's plea claiming damages by way of recoupment. This plea, in substance, charges that, in the three counties named, appellant was to have the exclusive right to sell the goods manufactured and sold him by the appellees, but that, in violation of the contract, appellees had sold to others indiscriminately in said three counties, to his damage, $1,000.

The allegations of the plea are too vague and indefinite, and furnish no criterion for estimating damages. It is not alleged that appellant was deprived of the sale of any of the goods or wares bought by him from appellees, nor that he was compelled, by appellees' conduct, to sell at cost or at a lower price than he had usually charged. In what particular he was damaged is not averred, and no evidence, competent under the plea, could have furnished the court with any data on which to ascertain the damages.

*Andre* v. *Morrow*, 65 Miss., 315, bears some strong general resemblance to the present case, but the plea in that case went far beyond the one here, and furnished a criterion for estimating the damages. The plea in *Andre* v. *Morrow* alleged that Morrow, or, rather, the firm of which he was the surviving member, gave him the sole agency for the sale of wagons at

Crystal Springs, and contracted to neither sell nor furnish wagons to any other dealer or agent at that point; but that plaintiff violated his contract, and sold to J. C. Smith and other dealers and agents at Crystal Springs, thereby causing such competition in the sale of its wagons at the town named that defendant was unable to sell any wagons manufactured by plaintiff at any profit whatever. On this plea, this court said: "There may be a legitimate basis for estimating damages. If there was such a contract as averred, and its breach, and Andre, in consequence, sold the wagons at cost, the commissions for selling as he had before done, may furnish a criterion for estimating damages." The case is easily distinguishable from the one in hand.

We find no reversible error, and are satisfied with the correctness of the conclusion reached on the whole case in the court below.

*Affirmed.*